# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                                   **Case No. 09-CR-148**

**ANTHONY LEWIS**
    **Defendant.**

## DECISION AND ORDER

Defendant Anthony Lewis, charged with drug and firearm offenses, moves to suppress a statement he made following his arrest, arguing that the police interrogated him in the absence of Miranda warnings. The parties have stipulated to the pertinent facts and agree that the motion can be resolved without a hearing.

## I. FACTS

In April of 2009, City of Milwaukee police officers Bodo Gajevic and John Wiesmueller obtained information from confidential sources about defendant's alleged drug trafficking and firearm possession. The officers were advised that defendant resided in the basement of 3823 North 4th Street in Milwaukee with his girlfriend, Jasmine Williams. They also determined that defendant was on probation for marijuana possession and had a prior felony conviction for recklessly endangering safety. Based on their investigation, on April 23, 2009, the officers obtained a search warrant for 3823 North 4th Street.

On April 28, 2009, at approximately 11:00 a.m., Gajevic and Wiesmueller proceeded to 3823 North 4th Street to monitor the residence in anticipation of executing the warrant. At approximately 11:15 a.m., they observed defendant exit the building and drive away. Law

enforcement had previously determined that defendant's driver's license was suspended.

Gajevic and Wiesmueller followed defendant to the 700 block of East Capitol Drive where, with the assistance of another officer, they conducted a traffic stop at 11:30 a.m. The officers handcuffed defendant and placed him in the rear of an undercover police vehicle, where Gajevic questioned him. Gajevic first informed defendant that he was being detained for driving without a valid license. Gajevic did not advise defendant of his Miranda rights.

Gajevic asked defendant for his name, date of birth and phone number, which defendant provided. Gajevic then asked defendant where he resided, and defendant responded, "3823 North 4th Street." Gajevic asked defendant who he lived there with, to which defendant responded, his girlfriend, Jasmine Williams. Gajevic also asked defendant who was at the house at the time, and defendant responded that his girlfriend's uncle – "T" – was the only person there. Gajevic asked if "T" was Toriano Garner, to which defendant stated, "yeah."

Gajevic then asked defendant if he was on probation, and defendant admitted that he was. Gajevic asked defendant if 3823 North 4th Street was the address he listed with his probation agent, and defendant admitted that it wasn't; he said that he also stayed at his mother's house at 3015 North 24th Place. Gajevic followed up with a question as to how many nights defendant stayed on North 4th Street; defendant responded, "about 4."

Following this conversation, Gajevic advised defendant that he was not stopped because of his driving status but rather based on a narcotics investigation. Gajevic stated that the officers had a warrant for the residence at 3823 North 4th Street, including the basement where law enforcement believed defendant resided with his girlfriend. Defendant responded by stating that he did not reside at 3823 North 4th Street and did not spend any nights there; he also denied that he had just left that address prior to the officers stopping him. Law

2

enforcement then executed the search warrant, seizing crack cocaine, powder cocaine and a pistol.

## II.  DISCUSSION

In order to protect the right against self-incrimination, the police must advise an individual of certain rights prior to subjecting him to custodial interrogation.  Miranda v. Arizona, 384 U.S. 436, 444 (1966).  Statements obtained in the absence of warnings may not be used in the government's case-in-chief.  Id.

To implicate Miranda, the person must be both "in custody" and subject to "interrogation."  United States v. Yusuff, 96 F.3d 982, 987 (7th Cir. 1996).  The parties agree that defendant was in custody when Gajevic questioned him in the back of the police car.  The issue is whether the questioning amounted to "interrogation" for purposes of Miranda.

"In Miranda, the Court defined custodial interrogation as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'"  United States v. Westbrook, 125 F.3d 996, 1002 (7th Cir. 1997) (quoting Miranda, 384 U.S. at 444).  It includes any words or actions on the part of the police, other than those normally attendant to arrest and custody, that the police should know are reasonably likely to elicit an incriminating response from the suspect.  Pennsylvania v. Muniz, 496 U.S. 582, 600-01 (1990); Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).  The "test is whether a reasonable objective observer would have believed that the law enforcement officer's statements to the defendant were reasonably likely to elicit an incriminating response."  United States v. Hendrix, 509 F.3d 362, 374 (7th Cir. 2007).

Defendant argues that Gajevic's queries cannot, under the circumstances of this case, be considered the sort of "routine booking questions" permitted by Innis.  See United States

3

v. Monzon, 869 F.2d 338, 342 (7th Cir. 1989). He states that the issue of where he lived – specifically, whether he lived at 3823 North 4th Street, where the drugs and gun were found – is critical in this case, and that Gajevic's questions pertaining to his connection to the residence were reasonably likely to elicit an incriminating response. The government concedes that Gajevic's follow-up questions about the other occupants of the residence, the address defendant gave his probation officer, and the number of nights he spent at the residence constituted interrogation under Miranda. However, it defends Gajevic's initial question as to where defendant resided as one normally attendant to an arrest.

It is true that the routine gathering of biographical data following an arrest does not ordinarily constitute interrogation under Miranda. However, this does not mean that any question asked during the booking process is permissible. The police may not ask questions, even during booking, that are designed to elicit incriminatory admissions. See Muniz, 496 U.S. at 602 n.14 (citing United States v. Avery, 717 F.2d 1020, 1024-1025 (6th Cir. 1983); United States v. Mata-Abundiz, 717 F.2d 1277, 1280 (9th Cir. 1983); United States v. Glen-Archila, 677 F.2d 809, 816 n.18 (11th Cir. 1982)); see also Monzon, 869 F.2d at 342 ("Routine booking questions are allowed because, to an objective observer, the questions are not 'designed to elicit an incriminating response.' Where the police should know that a question is likely to elicit an incriminating response, that question cannot be asked absent Miranda warnings.") (citation omitted). Thus, while asking a suspect for his address "will not usually constitute interrogation within the meaning of Miranda," see United States v. Edwards, 885 F.2d 377, 385-86 (7th Cir. 1989) (emphasis added), in some cases it may, see, e.g., United States v. McConer, 530 F.3d 484, 495-96 (6th Cir. 2008) (stating that an officer's question whether the defendant lived at the residence at which he was arrested "could be construed as interrogation," but finding any

4

error in admission of the defendant's response harmless); United States v. Virgen-Moreno, 265 F.3d 276, 294 (5th Cir. 2001) (rejecting application of the routine booking question exception where the officers asked the defendant if he lived at a residence associated with a drug conspiracy). I conclude that Gajevic's question as to where defendant resided constituted interrogation under the facts of this case.

At the time of the questioning the police knew (or reasonably should have known) that defendant's occupancy of the residence at 3823 North 4th Street was a significant issue in the case. The police had already obtained a warrant for the premises based on information that defendant possessed drugs and firearms there. An admission by defendant that he lived there could constitute significant evidence that he controlled the premises and possessed the contraband the officers hoped to find. See United States v. Smith, 3 F.3d 1088, 1098-99 (7th Cir. 1993) (finding interrogation where the police inquired as to ownership of a bag they intended to search, and attempted to link the defendant to a motel at which they had conducted surveillance).

Nor was this a routine booking encounter. Booking is essentially a clerical procedure, typically occurring soon after the suspect arrives at the police station. Mata-Abundiz, 717 F.2d at 1280. Here, the lead investigating officer questioned defendant, following a "pretext" traffic stop,[1] asking questions designed to link defendant to the premises about to be searched. This

---

[1] The officers were allowed to stop defendant for driving without a license, even though their real motive was to further their drug investigation. See Whren v. United States, 517 U.S. 806, 810 (1996) (rejecting inquiry into an officer's subjective motives under the Fourth Amendment). However, the fact that this was not a routine traffic stop is a relevant circumstance for purposes of resolving the Miranda issue. See United States v. Robinson, 586 F.3d 540, 546 n.7 (7th Cir. 2009) (rejecting the notion that the subjective intent of the police is irrelevant under Miranda).

5

was not a situation where the questions were designed to obtain biographical information; the police already knew who they had stopped, and they had information about where defendant lived and who he lived with. It is reasonable to conclude that the purpose of asking defendant about his residence was to obtain an incriminating response.[2] See generally Plantillas v. Cate, No. CV 08-1194, 2009 WL 890656, at *10 (C.D. Cal. Mar. 31, 2009) (contrasting preliminary investigative inquiries designed to obtain identifying information to confirm or dispel the suspicion of criminal conduct, which are outside the scope of Miranda, with comments that go beyond preliminary identification inquiries and are reasonably likely to elicit an incriminating response, which are within the scope of Miranda). Indeed, after the initial colloquy, Gajevic admitted to defendant that the traffic stop was essentially a ruse, that the officers were actually after defendant for drug and firearm offenses, and that they had a warrant for 3823 North 4th Street.

The government notes that the focus under Innis is primarily upon the perceptions of the suspect, rather than the intent of the police. 446 U.S. at 301-02. But this does not mean that the intent of the police is "irrelevant, as it might bear on whether they should have known that their actions were likely to elicit an incriminating response." United States v. Robinson, 586 F.3d 540, 546 n.7 (7th Cir. 2009). Here, a reasonable, objective observer would conclude, under the circumstances, that asking defendant where he resided was reasonably likely to elicit an incriminating response.

---

[2] The officer's purpose is further reflected in the follow-up questions about defendant's connection to the residence and the others who lived there. The government concedes that these questions constituted interrogation.

6

Case 2:09-cr-00148-LA   Filed 02/18/10   Page 6 of 7   Document 26

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion to suppress (R. 22) is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is scheduled for **STATUS** on **Friday, February 26, 2010, at 11:45 a.m.**

Dated at Milwaukee, Wisconsin, this 18th day of February, 2010.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge